**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WALTER MCNEAL, JR.,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:07-cv-943-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

### *I. BACKGROUND*

**A.**     **Procedural History**

Plaintiff filed for a period of disability, DIB[1] and SSI benefits on April 8, 2004. R. 82-84, 267-70. He alleged an onset of disability on March 11, 2004, due to an affective/mood disorder and

---

[1] The date of last insured for purposes of DIB is December 31, 2009. R. 14; R. 16, Finding 1.

hypertension, and obesity. R. 38, 293. He also alleged a mental breakdown, hearing voices, chemical imbalance in the brain, anxiety attacks, short term memory problems, halting speech. R. 95. His application was denied initially and upon reconsideration. R. 50-56, 274-81. Plaintiff requested a hearing, which was held on October 20, 2005, before Administrative Law Judge John M. Meisburg (hereinafter referred to as "ALJ"). R. 284-302. A supplemental hearing was held on June 1, 2006. R. 303-17. In a decision dated October 2, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-27. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on March 30, 2007. R. 5-7). Plaintiff filed this action for judicial review on June 4, 2007. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of acute stress disorder and depression, when he "flipped his lid" on March 11, 2004, the alleged onset date. R. 222, 234, 293. At the time of the hearing, Plaintiff was forty-seven years of age and had graduated from high school. R. 287, 289. Prior to March 11, 2004, Plaintiff had been employed as a fundraiser, teacher's aide, bus driver, a character at a theme park, a phone sales person, and a counselor at the high school. R. 101-07, 290-93.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from depressive disorder, not otherwise specified by history; morbid obesity; high blood pressure, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16, Finding 3; R. 18, Finding 4. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, as he could lift no more than ten pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools, and

sit six hours in an eight-hour workday. R. 20-21, Finding 5. In making this determination, the ALJ found that Plaintiff's description of his symptoms and limitations was considerably in excess of the abnormalities that were established by the medical evidence, especially in light of the normal consultative psychiatric examination and the lack of evidence of ongoing mental health treatment. R. 24. Based upon Plaintiff's RFC, the ALJ determined that he could perform his past relevant work as either a fundraiser or a phone salesman/salesman coordinator as he actually performed these jobs. R. 24, Finding 6. Considering Plaintiff's vocational profile and RFC, the ALJ found that even if Plaintiff could not perform his past relevant work, Plaintiff could perform other work existing in significant numbers in the national economy. R. 26, Finding 10. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 27, Finding 11.

Plaintiff asserts two points of error. First, he argues that the ALJ erred by finding he had the RFC to perform the full range of sedentary work contrary to treating and agency physicians' statements that he had . Second, he claims the ALJ erred by finding that he was "not credible" when the record shows he suffered from at least moderate limitations in concentration, persistence, and pace. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ANALYSIS*

**A.     RFC and the treating physician's opinion**

Plaintiff claims that the ALJ should not have found him able to perform his past relevant work or sedentary work in light of the marked mental limitations assigned by Dr. Thebaud, which would preclude the performance of sedentary work. The Commissioner contends the ALJ fully evaluated the evidence and properly relied upon a consultative psychiatric evaluation and medical expert testimony to conclude that Plaintiff could perform sedentary work, including his past relevant work.

Plaintiff contends that the ALJ did not adequately consider the opinion of Dr. Thebaud. Plaintiff also contends the ALJ erred in giving more weight to the opinion of Dr. Davis, who testified at the hearing and did not examine Plaintiff, than the opinion of Plaintiff's treating psychiatrist. The ALJ first discounted Dr. Thebaud's opinion in concluding that Plaintiff's mental problems did not meet a listed impairment:

> The undersigned ALJ called a medical expert to testify at the hearing in this case, Dr. Davis, who is [a] clinical psychologist. Dr. Davis testified that the claimant's conditions have not met or equaled the Listings of the Commissioner. He noted that the claimant had suffered a depressive reaction secondary to an incident at work. Upon questioning by the claimant's attorney, Dr. Davis testified that he had reviewed Exhibit 10F, which is a mental residual functional capacity assessment completed by Dr. Thebaud, and that he disagreed with Dr. Thebaud's conclusions.
>
> On September 13, 2005, Dr. Thebaud reported that the claimant was "markedly" limited in almost all areas of mental functioning. Specifically, Dr. Thebaud reported that the claimant's symptoms of anxiety, depression, and delusional disorder were causing him difficulty with functioning in a work environment as he was: unable to remember simple instructions; easily confused; suspicious; unable to concentrate; not liking to be around people; not in apparent condition to work. Dr. Thebaud also reported that the claimant had not been able to "hold a job."
>
> Dr. Davis testified that he disagreed with Dr. Thebaud's conclusions because they were inconsistent with the claimant's diagnosis of severe reaction, which is a condition that is not expected to last for very long. He testified that in Exhibit 7F, Dr. Thebaud initially concluded that the claimant would be incapacitated for 60 days. Dr. Davis noted that there was no evidence that the claimant had been hospitalized for any psychiatric condition or required extensive mental health treatment. As noted above, Dr. Thebaud saw the claimant infrequently, and primarily for medication management.

-5-

> During the year after the claimant's initial visit, Dr. Thebaud saw the claimant on only five occasions. According to the record, Dr. Thebaud has not seen the claimant since January 2005. Dr. Davis further noted that a recent consultative examination had revealed no evidence of mental limitations.
>
> After the October 20, 2005 hearing, the claimant attended a Consultative Examination (CE) that was ordered by the Office of Hearings and Appeals. The CE Report is dated January 7, 2006. The CE, N. Kirmani, M.D., found that the claimant was suffering from the following disabling conditions:
> 　　1. Depressive disorder, NOS, by [sic]
> 　　2. Obesity
> Dr. Kirmani, the CE Physician, also completed a Mental Capacities Evaluation form which opined that the claimant was not suffering from any limitations with his ability to understand, remember and carry out instructions or his ability to respond appropriately to supervision, co-workers and work pressures in a work setting.
>
> Therefore, based on Dr. Davis's testimony, as well as the fact that the claimant did not demonstrate any mental limitations during Dr. Kirmani's examination, the Administrative Law Judge finds that the claimant has not met or equaled any listed impairment.
>
> \* \* \*
>
> Dr. Davis testified that the claimant's mental impairments resulted in: mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; one episode of decompensation each of extended duration.
>
> The Administrative Law Judge finds that the medical expert testimony is consistent with the opinion of the state agency medical consultant who reviewed the record upon reconsideration and therefore, gives controlling weight to Dr. Davis's opinion with respect to the "B" criteria.

R. 18-20. The ALJ then again discounted Dr. Thebaud's opinion in assessing Plaintiff's residual functional capacity.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

-6-

do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In this case, in assessing Plaintiff's RFC, the ALJ "concluded that there is 'good cause' for not attaching substantial or considerable weight to Dr. Thebaud's treating source opinion" (R. 23):

> The Administrative Law Judge did not adopt Dr. Thebaud's conclusion based on the reasons described by Dr. Davis in his testimony. Additionally, Dr. Thebaud's conclusions are inconsistent with the claimant's medical records which reflect that he was doing "very well" on April 26, 2005 and "doing fine" on June 1, 2005. Dr. Theabaud's conclusions are also inconsistent with the opinions of the state agency psychological consultants.
> * * *
> Dr. Thebaud's conclusions are also inconsistent with the claimant's demonstrated abilities. For example, Dr. Thebaud reported that the claimant was unable to remember simple instructions, easily confused, and unable to concentrate. Yet, Dr. Kirmani administered clinical testing and reported that the claimant's memory was intact, he was able to do simple arithmetic, and was able to distinguish similarities and differences between items. The claimant told Dr. Kirmani that he is able to: count and handle money; write checks; buy things at the store - make change. During the hearing, the claimant had no observable difficulty in comprehending questions or providing answers. He appeared to pay attention throughout the procedure and otherwise displayed no concentration deficits. Likewise, Dr. Kirmani reported that the claimant has the ability to understand, remember and carry out instructions. Furthermore, Dr. Thebaud's assessment is inconsistent with his previously assess [GAF] of 57. The [DSM - Fourth Edition] provides that a GAF of 51-60 is reflective of "moderate" difficulty in social, occupational or school functioning . . . rather than "marked" difficulty. Neither the claimant, his attorney, nor Dr. Thebaud explained why the claimant would be unable to work in [an] environment that did not require frequent interaction with co-workers.

R. 23-24.

Plaintiff had problems at work with a coworker harassing him and went to his company's employee assistance program in July 2003; he eventually had what he described as a "breakdown" in March 2004, and was referred for psychiatric treatment. R. 235-39. He began treatment with Dr. Thebaud on March 18, 2004; Plaintiff reported having behavioral and emotional problems related to stress at work where a co-worker's harassment made work intolerable. R. 227. He reported feeling anxious, depressed, and socially isolated, and had flashbacks of being mistreated at work. During the examination, Dr. Thebaud noted Plaintiff to be dysphoric and depressed and assigned to Plaintiff a Global Assessment of Functioning of 58, which indicates moderate symptoms or moderate difficulty in social, occupational, or social functioning. R. 234. Plaintiff seemed sad and had a flat affect, but interacted well with him, and Plaintiff's memory was good but he had difficulty with concentration. R. 234.

In the first of a series of forms Dr. Thebaud was asked to complete for Plaintiff's Family Medical Leave Act ("FMLA") time off, he indicated on March 19, 2004 that Plaintiff was incapacitated and unable to perform at least some of the essential functions of his job due to anxiety, problems with stress management, depression, and irritability; the condition was expected to last "60 days." R. 213-14.

By April 2004, Dr. Thebaud indicated that Plaintiff had improved, was less nervous and more able to keep his emotions in control. R. 225. Dr. Thebaud noted that Plaintiff's depression had decreased, although he was having some residual hallucinations, and Dr. Thebaud increased Plaintiff's medications. R. 225. In May 2004, Dr. Thebaud noted that Plaintiff still had some symptoms of psychosis and paranoia, and some residual depression, but he was alert and oriented, his memory was intact, and his insight and judgment were appropriate. R. 223. In July 2004, Dr. Thebaud reported

that Plaintiff was "doing okay" on his current medications, was no longer acutely depressed, his memory was intact, and Plaintiff said that he felt better when he takes his medications. R. 221. Dr. Thebaud diagnosed a depressive disorder and rated Plaintiff's GAF at 60[2]. R. 222. In May 2004, Dr. Thebaud diagnosed Plaintiff as psychotic with auditory hallucinations, paranoia, and residual depression; memory was intact and insight and judgment were appropriate. R. 223.

A state agency reviewing physician indicated in June 2004 that Plaintiff had some moderate limitations in work-related mental functioning. R. 170-72. The reviewer noted that Plaintiff had experienced a breakdown due to stress, but that treatment notes indicate he had improved considerably, and Plaintiff's condition would not persist for 12 months. R. 174. A different reviewing physician in December 2004, opined that Plaintiff would have moderate limits in handling detailed instructions and maintaining concentration and attention for extended periods. R. 206-09. Neither reviewing physician found Plaintiff had marked limitations.

In October 2004, Dr. Thebaud noted that Plaintiff was doing okay on medications, but still had residual symptoms of depression and difficulty coping with stressors; he had decreased concentration, but his memory was intact. R. 217. In response to another FMLA form, Dr. Thebaud opined that Plaintiff's condition was temporary, expected to last twelve months. R. 211.

In January 2005, plaintiff reported that he was not doing well, and his wife reported that he was doing strange things such as "barking like a dog." R. 216. Dr. Thebaud noted that Plaintiff was alert and oriented, his memory was intact, and his insight and judgment were fair. R. 216. He assigned Plaintiff a GAF of 57 and switched him to a different medication. R. 216.

---

[2] According to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.-text revision 2000), the GAF scale is used to report the clinician's judgment of the individual's level of functioning in the psychological, social and occupational realms especially useful in planning a course of treatment, measuring its impact and predicting outcome (attached). A GAF score between 60-65 indicates mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

In another FMLA form, on March 15, 2005, Dr. Thebaud indicated that Plaintiff still had a depressive disorder and acute stress disorder, and remained unable to work. R. 210. Plaintiff could not concentrate, was "easily anxious," and Dr. Thebaud believed Plaintiff would not be able to return to work before March 2006. R. 210.

Treatment records show that Dr. Thebaud had not treated Plaintiff since January 2005, but nine months later, on September 13, 2005, he completed a mental residual capacity form opining that Plaintiff had marked limitations in the majority of the mental function categories. R. 254-56. He indicated that Plaintiff would have marked limitations in the categories of understanding and memory, concentration and persistence, social interactions, and mostly moderate limitations in adaptation, with marked limitation in the ability to respond appropriately to changes in the work setting. R. 255. He specifically opined:

> His symptoms of anxiety, depression, delusional disorder – at this point he has difficulty to function in a work environment. Cannot remember simple instructions – easily confused, suspicious – cannot concentrate. He has problems to adapt [sic] in social situations. He does not like to be around people. He has not been able to hold a job and does not appear in condition to work.

R. 256.

In January 2006[3], N. Kirmani, M.D., a psychiatrist evaluated Plaintiff for the SSA. R. 259-61. Dr. Kirmani's CE report concluded: "this individual does not manifest a psychotic reaction. There was no deterioration in personal habits and no impaired ability to relate to this examiner. there were no trophic changes noted and no intellectual deterioration identified. There may be anxiety and depressive factors based on his subjective comments." R. 261. Dr. Kirmani diagnosed depressive disorder by history. R. 261. Dr. Kirmani noted that Plaintiff was appropriately dressed and groomed, and was able to relate and cooperate with him; he had a driver's license and drives, and was able to

---

[3] The report is not dated, but was time stamped by the SSA on January 20, 2006. R. 259.

go to the store, prepare meals, work for a few hours, clean the house, watch television, read magazines, visit with friends and family, and participate in church activities. R. 259-60. Plaintiff was alert and cooperative, had a normal mood and a full range of affect; his thought content was normal and free of delusions or hallucinations, his memory was intact, and he could solve arithmetic problems and abstract. R. 260. Dr. Kirmani opined that Plaintiff could handle simple instructions, supervision, co-workers, and work pressures, and was not impaired in these areas. R. 262-64.

At the hearing on June 1, 2006, the ALJ took testimony from Dr. Davis, a psychiatric expert, who testified that he agreed with the assessments of the CE, the state agency psychologists, and disagreed with the assessment of Dr. Thebaud. R. 305-315. He testified that Plaintiff had a depressive reaction secondary to the incident at work, but Dr. Thebaud's treatment notes demonstrated that Plaintiff had improved. R. 304-06. Dr. Davis noted that there was "not much in the psychiatric history"; therefore, mental limitations on Plaintiff were mild, with one episode of decompensation. R. 306. He noted that reports from Family Psychiatric Services (Dr. Thebaud), where Plaintiff was treated "on and off," said he was "doing better," but there was "just not much there to react to." R. 306.

Plaintiff correctly points out that the ALJ miscited another doctor's testimony as the opinion of Dr. Thebaud in rejecting his opinion. The ALJ's reference to "the medical records of the doctor reflect that Plaintiff was doing "very well" and "doing fine" was incorrect. R. 22. The medical records cited by the ALJ as being those of Dr. Thebaud were actually the medical records of Dr. Manual Crisanto, who was treating Plaintiff for hypertension, and not the depression[4]. R. 241-42. However, this was relatively a small reason for giving less weight to Dr. Thebaud's opinion. In light of the other significant bases the ALJ discussed at length for discounting Dr. Thebaud's opinion – *i.e.*, the

---

[4] It is also easy to understand how the ALJ might have combined Dr. Thebaud's records with Dr. Crisanto, in that they both have practically illegible hand-written notes and the records were one right after the other.

-11-

consulting examination performed by Dr. Kirmani, the testimony of Dr. Davis at the hearing, as well as the state physicians' opinions – the ALJ's opinion is supported by substantial evidence.

Plaintiff contends that the ALJ also erred in ignoring the "moderate" mental limitations assigned by Dr. Davis and the state agency reviewing physician, which he argues, should have been included in his residual functional capacity. Plaintiff points to the testimony of Dr. Davis who opined that Plaintiff had "moderate" limitations in his ability to maintain concentration, persistence, and pace. R. 306. The state agency reviewing physician also opined that Plaintiff would have moderate limitations in his ability to maintain concentration, persistence, and pace and was "moderately limited" in his ability to carry out detailed instructions and maintain attention and concentration for extended periods. R. 202, 206. The Commissioner argues that Dr. Kirmani, who performed the CE, and one of the state reviewing physician did not find moderate limitations on concentration, only occasional or no limitations.

The ALJ did not, as Plaintiff argues, ignore the moderate difficulties in concentration, persistence, or pace, and in fact, specifically cited them in his decision. R. 20. The ALJ also noted that he was giving "controlling weight" to the consultative examination of Dr. Kirmani, who assessed no mental limitations. R. 21. As such, the ALJ's finding that Plaintiff could return to his past relevant work or other sedentary work available in the economy was based on substantial evidence.

### B. Credibility

Plaintiff asserts that the ALJ erred in evaluating his credibility concerning his mental limitations because the ALJ did not make accurate and specific findings . He contends that the record supports his testimony that he suffers from documented impairments causing mental limitations.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

> The ALJ found that the testimony of the Plaintiff was "not credible" (R. 24):
>
> Under the Holt standard, the Administrative Law Judge finds that the claimant's description of his symptoms and limitations was considerably in excess of the abnormalities that were established by the medical evidence, especially in light of the normal consultative psychiatric examination, and the lack of evidence of ongoing mental health treatment. Even if the Administrative Law Judge were to completely accept these alleged limitations, the Administrative Law Judge would conclude that these limitations did not preclude the claimant from performing the type of the activities identified in the assessed residual functional capacity. moreover, as noted above, the claimant admits to "working" during the day, and his wife stated that he had been "working like a dog." Therefore, the Administrative Law Judge finds that the claimant's testimony was not credible.

R. 24.

Plaintiff first complains that the ALJ is utilizing the pain standard when assessing Plaintiff's credibility, when the claimant does not assert that he suffers from pain. The ALJ used the appropriate standard for assessing subjective complaints. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part standard, whether for pain or other symptoms, which requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain

arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The ALJ cited the *Holt* case, which is the appropriate standard.

Where an ALJ decides not to credit a claimant's testimony about his symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ's citation to Plaintiff having "a normal consultative examination" was inaccurate because the examination was done on January 7, 2006, approximately two years after the onset date of disability, and ignores all of the earlier mental health reports, including those of the state agency physicians, who found Plaintiff had mental limitations. As set forth in detail above, the ALJ extensively discussed the reasons for discounting Dr. Thebaud's opinion and applying the CE opinion of Dr. Kirmani; the ALJ's decision to apply Dr. Kirmani's opinion was based on substantial evidence.

The only other issue raised by Plaintiff as to his credibility is that the ALJ misquoted Dr. Thebaud's treatment notes as stating that Plaintiff's wife "stated that he had been 'working like a dog.'" R. 24. Plaintiff is correct that the context of the treatment notes indicates instead that Plaintiff's wife complained to Dr. Thebaud that Plaintiff was "acting strange and *barking* like a dog." R. 216.

At the same time, Plaintiff admits that "Dr. Thebaud's handwriting is extremely difficult to read," and the Court finds that is the source of the confusion. Moreover, the ALJ's credibility determination did not turn on a single comment. The ALJ reviewed the medical records extensively and also quoted from Dr. Kirmani's CE report that stated as to Plaintiff's activities of daily living that Plaintiff "usually spends the day staying at home or *working for a few hours.*"  R. 259 (emphasis added). The ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence.

## *CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 8, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record